I AW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 29597

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE MATTER OF THE TAX APPEAL OF
COMPUSA STORES, L.P., Taxpayer-Appellant v.
STATE OF HAWAI'I, DEPARTMENT OF TAXATION, Appellee

APPEAL FROM THE TAX APPEAL COURT
(CASE NO. 05-0065)

MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Appellant-Taxpayer CompUSA Stores L.P. (**CompUSA**) appeals from the December 22, 2008 Judgment (**Judgment**) entered by the Hawai'i Tax Appeal Court (**Tax Appeal Court**)[1] against CompUSA and in favor of Appellee/Appellee State of Hawai'i, Department of Taxation (**State**).[2]

This tax appeal involves the State's imposition of the use tax, pursuant to Hawaii Revised Statutes (**HRS**) § 238-2, on tangible personal property shippped from the mainland by CompUSA to its Hawai'i retail stores (the **Audited Transactions**) between July 1, 1999 and December 31, 2002 (the **Audit Period**). CompUSA contends that the use tax statute in effect during the Audit Period, HRS § 238-2 (2001), does not provide for taxation of the Audited Transactions.

I. BACKGROUND

The following facts apply to the Audit Period. CompUSA, a Delaware corporation, is a retail seller of

---

[1] The Honorable Gary W.B. Chang presided.

[2] Appellant also seeks relief from the Tax Appeal Court's December 22, 2008 Order Granting Director of Taxation, State of Hawaii's Motion for Summary Judgment, and December 22, 2008 Order Denying Appellant-Taxpayer CompUSA Stores L.P.'s Motion for Summary Judgment.

electronics with corporate headquarters in Dallas, Texas. During the Audit Period, CompUSA conducted business in Hawaiʻi through two retail stores (**Retail Stores**), open to the general public, and held a Hawaiʻi general excise tax license in connection therewith.[3]

CompUSA managed and conducted all purchasing decisions at its Dallas headquarters and purchased all inventory sold at the Retail Stores from third-party vendors located on the mainland. It is undisputed that these sales transactions, from third-party vendors to CompUSA, did not subject the third-party vendors to the Hawaiʻi general excise tax. All inventory purchased from the mainland vendors and ultimately sold at the Retail Stores was transported from outside Hawaiʻi via "cross-dock" or "drop-shipment."

With regard to cross-dock deliveries, third-party vendors delivered the purchased inventory to consolidated centers located outside Hawaiʻi and owned by CompUSA.[4] Upon arrival to the delivery centers, title and risk of loss to the inventory passed from vendor to CompUSA. CompUSA, through various agents and sub-agents, then shipped its inventory from the mainland consolidation center to its Hawaiʻi Retail Stores. In drop-shipment deliveries, inventory was purchased by CompUSA by its mainland corporate offices, but vendors directly shipped the purchased inventory from the mainland to the Hawaiʻi Retail Stores. As with cross-dock deliveries, title and risk of loss to the inventory passed from the vendor to CompUSA on the mainland.[5]

---

[3] While the exact date is unclear, CompUSA has since ended all retail operations in Hawaiʻi.

[4] During the Audit Period, approximately 97% of the relevant cross-dock inventory was delivered to a consolidated center in La Palma, California.

[5] During the Audit Period, cross-dock deliveries constituted approximately 58.6% of the cost of goods delivered to the Retail Stores, while drop-shipment deliveries accounted for the remaining 41.4%.

In 2003, the State audited CompUSA for unpaid taxes on transactions which occurred during the Audit Period. On June 9, 2004, the State issued notices of final assessment to CompUSA which imposed $1,099,348.98 in unpaid use tax and $210,223.10 in unpaid interest on the principal amount of the tax. The State maintained, pursuant to HRS § 238-2, that CompUSA failed to pay the .5% retail use tax on the Audited Transactions. CompUSA disputed the imposition of use tax on those transactions.

On July 9, 2004 pursuant to HRS §§ 237-42 and 238-8 (Supp. 2004), CompUSA filed notices of appeal with the Board of Review for the First Taxation District (**Board**), requesting a reassessment of the tax deficiencies articulated in the June 9, 2004 notices of final assessment. On October 20, 2005, the Board, at CompUSA's request and pursuant to HRS § 235-114, transferred the matter to the Tax Appeal Court.

On November 3, 2005, CompUSA also filed a notice of appeal with the Tax Appeal Court, later amended on November 21, 2005, challenging the imposition of use tax on the Audited Transactions.

On May 29, 2008, CompUSA moved for summary judgment and on August 7, 2008, the Department cross-moved for summary judgment. On November 17, 2008, the Tax Appeal Court held a hearing on the cross-motions, and after entertaining oral argument, granted the Department's motion and denied CompUSA's motion.

On December 22, 2008, the Tax Appeal Court entered an order granting the State's motion for summary judgment, an order denying CompUSA's motion for summary judgment, and the Judgment in favor of the State and against CompUSA, in the amount of $1,099,348.98 in unpaid use tax and $605,988.73 in interest. On January 21, 2009, CompUSA timely filed a notice of appeal.

II.  POINTS OF ERROR ON APPEAL

Only one point of error is properly before this court on appeal.  CompUSA contends that the Tax Appeal Court erred when it denied CompUSA's motion for summary judgment and granted the State's motion for summary judgment because the Audited Transactions were not subject to the Hawaiʻi use tax, pursuant to the Hawaiʻi Supreme Court's decision in In re Tax Appeal of Baker & Taylor, Inc. v. Kawafuchi, 103 Hawaii 359, 82 P.3d 804 (2004).[6]

III. APPLICABLE STANDARD OF REVIEW

"We review the circuit court's grant or denial of summary judgment de novo."  Querubin v. Thronas, 107 Hawaiʻi 48, 56, 109 P.3d 689, 697 (2005) (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawaiʻi 490, 501, 100 P.3d 60, 71 (2004)).  Likewise, the meaning of a statute is a question of law that is reviewed de novo.  See, e.g., Sierra Club v. Dep't of Transp. of State of Hawaiʻi, 120 Hawaiʻi 181, 197, 202 P.3d 1226, 1242 (2009).

IV.  DISCUSSION

The use tax is governed by HRS Chapter 238.  During the Audit Period, HRS § 238-2 (2001) provided in relevant part:[7]

> § 238-2.  **Imposition of tax; exemptions.**  There is hereby levied an excise tax on the use in this State of tangible personal property which is imported, or purchased from an unlicensed seller, for use in this State.  The tax imposed by this chapter shall accrue when the property is acquired by the importer or purchaser and becomes subject to the taxing jurisdiction of the State.  The rates of the tax hereby imposed and the exemptions thereof are as follows:
>
> (1)  If the importer or purchaser is licensed under chapter 237 and is:
>
> (A)  A wholesaler or jobber importing or purchasing for purposes of resale; or

---

[6]  As argued by the State, the Tax Appeal Court did not rule on the additional points of law raised by CompUSA and are beyond the scope of this appeal.

[7]  During the Audit Period, the cited statutory language was not altered in relevant part.  Therefore, when referring to the version of HRS § 238-2 in effect during the Audit Period, we reference HRS § 238-2 (2001).

   (B) A manufacturer importing or purchasing
     material or commodities which are to be
     incorporated by the manufacturer into a
     finished or saleable product . . . and
     which finished or saleable product is to
     be sold in such manner as to result in a
     further tax on the activity of the
     manufacturer as the manufacturer or as a
     wholesaler, and not as a retailer,

  there shall be no tax; . . .

  (2) If the importer or purchaser is licensed under
    chapter 237 and is:

   (A) A retailer or other person importing or
     purchasing for purposes of resale, not
     exempted by paragraph (1);
     . . . .

  the tax shall be one-half of one per cent of the
  purchase price of the property, if the purchase
  and sale are consummated in Hawaii . . . or if
  the purchase or sale is consummated outside of
  Hawaii, then one-half of one per cent of the
  value of such property . . . .

In conjunction with this provision, HRS § 238-1 (1993 & Supp. 1999) provides the following definitions:[8]

   **§ 238-1. Definitions, generally.** Whenever used in
this chapter, unless otherwise required by the context:

   "General excise tax law" means chapter 237, as amended
from time to time.

   "Import" (or any nounal, verbal, adverbial, adjective,
or other equivalent of the term) includes importation into
the State from any other part of the United States or its
possessions or from any foreign country, whether in
interstate or foreign commerce or both.
   . . . .

   "Property" means tangible personal property . . .

   "Purchase" and "sale" means any transfer, exchange, or
barter, conditional or otherwise . . . of tangible personal
property or services for a consideration.[9]

---

  [8] During the Audit Period, the cited statutory definitions were not altered in any manner relevant to this appeal. Therefore, when referencing to the version of HRS § 238-1 as drafted during the Audit Period, we are referring to HRS § 238-1 (1993 & Supp. 1999).

  [9] In 2000, the Legislature amended this provision, retroactive to taxes accruing after December 31, 1999, to read:

    "Purchase" and "sale" means any transfer, exchange, or
                (continued...)

"Purchaser" means any person purchasing property or services and "importer" means any person importing property or services . . . [10]/

. . . .

"Unlicensed seller" means any seller who, with respect to the particular sale, is not subject to the tax imposed by chapter 237, whether or not the seller holds a license under that chapter, but does not include any seller with respect to any sale which is expressly exempted from the tax imposed by chapter 237.

"Use" (and any nounal, verbal, adjectival, adverbial, and other equivalent form of the term) . . . means any use, whether the use is of such nature as to cause the property or services to be appreciably consumed or not, or the keeping of the property or services for such use or for sale, and shall include the exercise of any right or power over tangible or intangible personal property incident to the ownership of that property . . . [11]/

In 2004, in <u>Baker & Taylor</u>, 103 Hawai'i 359, 82 P.3d 804, the supreme court interpreted both the Hawai'i general excise tax (**GET**) statute and the use tax statute at issue in this case.

---

[9]/(...continued)
barter, conditional or otherwise...of tangible personal property, services, or *contracting* for a consideration.

2000 Haw. Sess. L. Act 198, § 7 at 475 (emphasis added).

[10]/    In 2000, the Legislature amended this provision, retroactive to taxes accruing after December 31, 1999, to read:

"Purchaser" means any person purchasing property, services or *contracting* and "importer" means any person importing property, services, or *contracting* .

. .

2000 Haw. Sess. L. Act 198, § 7 at 475 (emphasis added).

[11]/    In 2000, the legislature amended this provision, retroactive to taxes accruing after December 31, 1999, to read:

"Use" (and any nounal, verbal, adjectival, adverbial, and other equivalent form of the term)...means any use, whether the use is of such nature as to cause the property, services, or *contracting* to be appreciably consumed or not

. . .

2000 Haw. Sess. L. Act 198, § 7 at 476 (emphasis added). The term "use" does not include, <u>inter alia</u>, use of property acquired by gift, certain temporary use of property, and certain use of household goods, personal effects and private automobiles for nonbusiness purposes. <u>See</u> HRS § 238-1 (1993 & Supp. 1999).

The taxpayer in that case, Baker & Taylor, Inc. (**Baker**), was a Delaware corporation with its headquarters and principal place of business in Charlotte, North Carolina, engaged in selling books to, among others, the Hawai'i State Library. Id. at 361-62, 82 P.3d at 806-07. Although not specifically stated in the supreme court's opinion, the parties in that case stipulated and the court, without a doubt, understood that Baker was a wholesaler of books and other educational materials to institutional and commercial customers.[12/] The supreme court's analysis of the use tax issue was as follows:

> The final issue is whether Baker is subject to Hawaii's use tax. As previously indicated, the use tax statute, HRS § 238-2, states that '[t]here is hereby levied an excise tax on the use in this State of tangible personal property which is imported, or purchased from an unlicensed seller, for use in this State.' (Emphases added.) The term 'use' under HRS § 238-1 includes 'any use, whether the use is of such nature as to cause the property to be appreciably consumed or not, or the keeping of the property for such use or for sale, and shall include the exercise of any right or power over tangible personal property incident to the ownership of that property[.]'
>
> Baker argues that inasmuch as it was stipulated that title passed on the mainland, Baker did not own the goods when they arrived in Hawai'i. Accordingly, Baker argues it is not subject to the use tax. On the other hand, the Department imposed the use tax on Baker on the bases that (a) Baker imported tangible personal property into Hawai'i for resale pursuant to HRS § 238-2(2) and (b) Baker 'used' personal property as defined in HRS § 238-1 when it directed delivery of the purchased goods to Hawai'i customers.
>
> 'Where the language of a statute is plain and unambiguous, our only duty is to give effect to the statute's plain and obvious meaning.' Iddings v. Mee-Lee, 82 Hawai'i 1, 7, 919 P.2d 263, 269 (1996). According to HRS § 238-1, 'imported' [FN21] 'includes importation into the State from any other part of the United States or its possessions or from any foreign country, whether in interstate or foreign commerce, or both.' 'Purchase' is defined as 'any

---

[12/] In footnote 7 of the Baker & Taylor case, the supreme court noted that Baker and the State had filed a stipulation of facts in the tax appeal court. Baker & Taylor, 103 Hawai'i at 361 n.7, 82 P.3d at 806 n.7. The stipulation of facts included the fact that Baker was one of the largest wholesalers of books in the world, with distribution centers in 13 states (but not Hawai'i) and international sales offices in Australia and Japan. In the case now before us, the Baker & Taylor stipulation was submitted to the Tax Appeal Court, without objection, in conjunction with the summary judgment motions.

transfer, exchange, or barter, conditional or otherwise, in any manner or by any means, wheresoever consummated, of tangible personal property for a consideration.' HRS § 238-1. The sale of books was directly from Baker to the Library. Therefore Baker did not import the books from an unlicensed seller. Furthermore, Baker did not purchase the books and 'resell' the goods to the Library. Under the circumstances of this case Baker could not import from itself or purchase from itself. Therefore, Baker is not subject to the use tax under the plain language of HRS § 238-1.

> [FN21.] Although the statute defines the word 'import,' there is a parenthetical qualifier directly after 'import' which states, '(or any nounal, verbal, adverbial, adjective, or other equivalent of the term)'. Therefore, the definition for 'import' would be equivalent to 'imported.'

> Although the Director is concerned with the imposition of a uniform tax burden, the taxing burden is not at issue here. As HRS § 238-2 deals with the imposition of a tax on the 'use in this State of tangible personal property[,]' it is inapplicable. The Director's reliance on In Re Tax Appeal of Habilitat, 65 Haw. 199, 649 P.2d 1126 (1982), is inapposite. Habilitat, a not-for-profit organization in Hawai'i, advertised the availability of mainland products to Hawai'i consumers. Consumers placed orders with Habilitat and Habilitat would have the mainland supplier ship the products directly to the Hawai'i consumer. The organization argued that it never possessed or used the property so it should not be assessed use taxes. This court disagreed, stating that the definition of use in HRS § 238-1 included 'the exercise of any right or power over tangible personal property incident to the ownership of that property.' Id. at 210, 649 P.2d at 1134. Since the organization had the power to order the mainland supplier to ship the goods to the consumer, the court found sufficient 'right or power over the tangible personal property' to impose the use tax. Id. In contrast, Baker did not direct a third party supplier to ship the books to the Library. Rather, Baker itself was the supplier.

Baker & Taylor, 103 Hawai'i at 372-73, 82 P.3d at 817-18.

In applying the plain language of HRS § 238-1 and § 238-2 (1993), the supreme court held that Baker was not subject to the use tax. Id. The court first noted that, in order for § 238-2 to be triggered, a taxpayer must "import" or "purchase" tangible personal property from an "unlicensed seller." Id. Within this context, the court reasoned that Baker, not a third-party, was the mainland supplier of the books – therefore, Baker

did not "import" the books from an "unlicensed seller.[13]" Id.
The court also expressly observed that Baker did not "purchase
the books and 'resell' the goods to the Library" – thus, the
court concluded that Baker could not "purchase from itself." Id.
With these principles in mind, the court excluded the subject
transactions from the use tax. Id. When it was enacted, and as
interpreted by the supreme court, the use tax law was established
for the purpose of taxing "the value of goods purchased directly
from non-licensed sellers and brought into the State for resale."
Senate Conf. Comm. Rep. No. 6, 1965 Senate Journal, at 814. In
essence, Baker successfully availed itself of a loophole in the
use tax law by shipping goods it already owned to Hawai'i, rather
than goods purchased directly from non-licensed mainland sellers.

In response to the Baker & Taylor decision, the
Legislature immediately passed amendments to HRS §§ 238-1 and
238-2 to close this loophole. See 2004 Haw. Sess. Laws Act 114,
§ 1 at 431. Act 114 of 2004 expressly amended HRS §§ 238-1 and
238-2, and explained its purpose as follows:

> SECTION 1. The purpose of this Act is to clarify
> current use tax laws in light of *Baker & Taylor, Inc. v.
> Kawafuchi*, S.C. 23376 (Jan. 14, 2004) and administrative
> rule 18-237-13-02.01 by:
>
> (1) Clarifying when a seller is subject to the 0.5 per
> cent use tax;
>
> (2) Restoring the imposition of taxes on goods purchased
> both within and outside the State; and
>
> (3) Clarifying that the use tax applies to sellers
> who acquire goods from outside the State and
> import the product for sale or resale in the
> State.

Id. While described as clarifications, the amendments clearly
modified the prior version of the statute as it was interpreted

---

[13] As noted above, an "unlicensed seller," for purposes of the
Chapter 238 use tax, is generally defined as a seller, who with respect to the
particular transaction, is not subject to the Chapter 237 general excise tax.
See HRS 238-1 (1993). Baker, on the other hand, was subject to the Chapter
237 general excise tax. Baker, 103 Hawai'i at 367, 82 P.3d at 812.

by the Hawai'i Supreme Court in <u>Baker & Taylor</u>. <u>See</u> 2004 Haw. Sess. Laws Act 114, §§ 2 & 3 at 431-35.[14]/

In this case, as in <u>Baker & Taylor</u>, there was no purchase or importation from an unlicensed seller because CompUSA itself was the supplier. The State argues that CompUSA necessarily purchased its goods from unlicensed vendors such as Apple, HP, Belkin, Palm, etc. However, so did Baker, which was stipulated to be a book wholesaler, not a publisher or manufacturer. CompUSA, like Baker, completed its third-party purchase transactions on the mainland and then shipped the goods to Hawai'i. CompUSA, like Baker, sold goods it owned to its customers in Hawai'i. The supreme court, in <u>Baker & Taylor</u>, treated this transaction as an initial sale of the taxpayer's goods, rather than a resale of goods purchased from an unlicensed third-party vendor. We must apply the same analysis in this case. Like the taxpayer in <u>Baker & Taylor</u>, CompUSA could not be said to have imported or purchased goods from itself, and therefore was not liable for payment of the use tax under the law in effect during the Audit Period.

Finally, the State urges us to accord persuasive weight to the administrative rules promulgated to carry out the purpose of HRS Chapter 238. However, we are bound by the supreme court's interpretation of the statute and, as the court noted in <u>Baker & Taylor</u>, the administrative rule cannot contradict the statute. <u>Baker & Taylor</u>, 103 Hawai'i at 64 n.14, 82 P.3d at 809 n.14; <u>see also</u>, <u>e.g.</u>, <u>Coon v. City and County of Honolulu</u>, 98 Hawai'i 233, 251, 47 P.3d 348, 366 (2002) (stating that "it is axiomatic that an administrative rule cannot contradict or conflict with the statute it attempts to implement"). Therefore, we need not examine whether the administrative rule in effect in 2004 was

_____

[14]/ As the State reiterated in its answering brief, the State never took the position that CompUSA was subject to taxation pursuant to 2004 amendments. Therefore, we do not address CompUSA's arguments concerning the use tax statute, as amended.

consistent or inconsistent with the supreme court's interpretation.

V.    CONCLUSION

For these reasons, we conclude that the Tax Appeal Court erred when it denied CompUSA's motion for summary judgment and granted the State's motion for summary judgment because the Audited Transactions were not subject to the Hawai'i use tax. Accordingly, we vacate the Tax Appeal Court's December 22, 2008 Judgment and remand for further proceedings consistent with this Memorandum Opinion.

DATED:   Honolulu, Hawai'i, May 28, 2010.

Ray K. Kamikawa
(Leroy E. Colombe and
Adrienne S. Yoshihara
with him on the briefs)
(Chun, Kerr, Dodd, Beaman
  & Wong)
for Taxpayer-Appellant

Damien A. Elefante, Deputy
Attorney General (Hugh R. Jones,
Deputy Attorney General, with
him on the brief)
for Appellee STATE OF HAWAI'I,
  DEPARTMENT OF TAXATION

Presiding Judge

Associate Judge

Associate Judge